UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| JOEL ANTWAN ROBINSON, #48860, | ) | Civil Action No.: 4:08-1880-RBH-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| | ) | |
| REYNALDO MEYERS, Director, Alvin | ) | **REPORT AND RECOMMENDATION** |
| S. Glenn Detention Center; MILTON | ) | |
| POPE, County Commissioner; | ) | |
| ASSISTANT DIRECTOR HARRELL; | ) | |
| CAPTAIN WILLIAM REFO; CAPTAIN | ) | |
| MICHAEL HIGGINS; CAPTAIN | ) | |
| REDMAN; CAPTAIN BOWMAN, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

I.  **INTRODUCTION**

Plaintiff, who is proceeding pro se, was at all times relevant to the incidents set forth in his Complaint, housed at the Alvin S. Glenn Detention Center (the detention center). Plaintiff raises numerous constitutional claims under 42 U.S.C. § 1983.

Presently before the Court is Defendant's Motion for Summary Judgment (Document # 50). Because he is proceeding pro se, Plaintiff was warned pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the Motion for Summary Judgment could result in the dismissal of his claims. Plaintiff timely filed a Response (Document # 57) to the Motion for Summary Judgment.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. Because this motion is potentially dispositive of Plaintiff's claims, this Report and Recommendation is entered for

review by the district judge.

## II. FACTUAL ALLEGATIONS

Plaintiff sets forth the following factual allegations in his Complaint:

Greivance # 1. The facility grievance process is inadequate and fails to meaningfully address detainees issues and at times does not respond. The process does not allow an initial review as it goes to officer (detention officer) before being properly dealt with and appellate process fails to comply with constitutional safeguards. Detention center has a grievance process just to have one.
Legal # 2. Detention center does not allow or have the proper settings for attorney visits to be private. At times attorney client visits are conducted on Rec field, sally port area or in units when multi-purpose room is occupied with another attorney. They (detention center) have a duty to ensure visits with attorneys are confidential and at facility they are not. Also, the detention center is currently denying most detainees with certain charges or certain amount of bond access to law library and this is detention center policy. Likewise they have not way of adequately ensuring detainees receive legal mail.
Health # 3. Detention center does not allow bi-daily cleaning or daily cleaning of rooms in general population or SHU. Standard practice by detention center is also to give detainees sheets which are supposed to be clean returned no better and still dirty. Not only that, the detention center does not medically screen inmates for TB and other infectious diseases and will automatically place inmates/detainees in room without determining whether or not he/she is contaminated. Give detainees same shower shoes and cups used by others.
Double celling # 4. Detention center is double celling in SHU and general population when rooms do not have adequate space for two members/detainees. At times detainees have had their beds urinated on when other detainees have missed. But SHU is a high security area and placing two detainees in cell is a serious safety issue and in each area in general population there is not the required amount of space as required for two inmates/detainees.
Disciplinary Hearings # 5. The detention center fails to properly conduct hearings and will find detainees guilty without hearings and assistance during hearing or allowed to call witnesses. Nor does it allow detainees within dorm to have one hour rec and when in SHU it is same. Now most importantly is that Sgt. Jackson will bring you charge papers after he has found you guilty and the administration knows this as well as fact no prehearing confinement notice is serve on detainees. They are just confined to cells in general population and SHU without notice.
Religious # 6. Detention center fails to allow detainees to obtain prayer rugs or furnish us with kosher meals and to pray during certain times as required by religious beliefs. It is unsanitary to use sheets or blankets on rec field where detainees spit on ground and we are forced to pray under these conditions. The detention center discriminates against us as officers will not allow Muslims to have their Friday

> service without detention officers refusing to let all Muslims out and the same is applied to Hebrews, which have been denied religious services all together.
> Access to Courts # 7. Here at this facility they implemented a top and bottom system for recreation. They say this is for security purpose. Since 2006 when this started its only been implemented as a form of denying detainees access to the courts. This system does not allow detainees the proper amount of access or time to make attorney calls which is a constitutional right, therefore making this a constitutional violation for the purpose of this lawsuit. (D/Os) Dorm officers as they are called used this as a form of punishment because they've had a bad night or problems at home.

Complaint at 3-4.

### III. STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), FRCP; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine issue for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on

must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

Rule 56(e) provides, "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." See also Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). To raise a genuine issue of material fact, a party may not rest upon the mere allegations or denials of his pleadings. Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Id. at 322. See also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV. DISCUSSION

### A. 42 U.S.C. § 1983

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). A legal action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). To be successful on a claim under § 1983, a plaintiff must establish two essential

elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

### B. Legal Analysis Applicable to Pretrial Detainees

Plaintiff is detained at the detention center to await the disposition of pending charges. Ex. A to Shull Aff. Allegations of deprivations regarding pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment. Cooper v. Dyke, 814 F.2d 941 (4th Cir.1987). The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions ... the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment (citations omitted).

A pretrial detainee may not be punished. An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual." Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Using the standard set out in that case, a condition must be evaluated on whether or not it was implemented to "punish" the detainee before he was convicted of any crime. Balanced against that concern, however, is the legitimate security concerns of housing a number of persons prior to their trials. If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet its goal, and was not imposed simply to punish the inhabitants of a facility, it will be upheld. Bell, 441 U.S. at 538.

### C. Other Inmates

As an initial matter, any allegations Plaintiff has made regarding other inmates must fail. To state a civil rights claim, one must allege that he, himself, sustained a deprivation of right, privilege, or immunity secured by the Constitution of federal law. Inmates v. Owens, 561 F.2d 560, 562-63 (4th Cir.1977). To demonstrate standing, plaintiff must allege personal injury fairly traceable to defendant's allegedly unlawful conduct and likely to be redressed by requested relief. Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984).

### D. Grievance Procedure

Plaintiff complains that the grievance procedure at the detention center is inadequate. Plaintiff's complaints do not rise to the level of a constitutional violation as there is no constitutional right to participate in grievance proceedings. Adams v. Rice, 40 F.3d 72, 75 (4th Cir.1994). It is well settled that prison inmates, including pre-trial detainees, do not have a federal constitutional right to have any inmate grievance system at the place where they are incarcerated. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir.1994); furthermore, simply because a state or local authority chooses to establish an inmate grievance system, that choice does not confer any substantive constitutional right on the prison inmates or pre-trial detainees covered by that system. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir.1988). As a result, even if corrections officials fail to properly apply an inmate grievance procedure, such failure is not actionable under section 1983. See Spencer v. Moore, 638 F.Supp. 315, 316 (E.D.Mo.1986); Azeez v. DeRobertis, 568 F.Supp. 8, 9-11 (N.D.Ill.1982). Thus, summary judgment is proper on this claim

### E. Access to Courts

Plaintiff complains that inmates at the detention center are not provided with private rooms

to meet with attorneys, certain inmates are not allowed to use the library, the center has no adequate process for ensuring that inmates receive their mail, and inmates are not provided with sufficient time to make phone calls to attorneys. The critical issue that must be analyzed to resolve the claims in this case is whether or not the plaintiff has been denied meaningful access to courts and is able to show actual injury as a result of the denial alleged. Prisoners do not have a cause of action under § 1983 for negligent interference by prison officials with their right of access to the courts. Pink v. Lester, 52 F.3d 73 (4th Cir.1995) ("negligent denial of access to the courts is not actionable under § 1983.") A prisoner must allege adverse consequence as a basis for allegations that the delay or non delivery deprived him of meaningful access to the courts. White v. White, 886 F.2d 721 (4th Cir.1989); Morgan v. Montanye, 516 F.2d 1367 (2d Cir.1975) cert. denied, 424 U.S. 973, 96 S.Ct. 1476, 47 L.Ed.2d 743 (1976). Actual injury must be more than theoretical deficiencies, it is showing that the alleged deficiencies have hindered or are hindering a prisoner's efforts to pursue a legal claim. Lewis v. Casey, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Plaintiff has failed to meet this burden in that he has not alleged or shown that he has suffered any actual injury. Thus, his access to courts claims fail.[1]

---

[1] In his Response, Plaintiff asserts that Defendants show favoritism by only allowing inmates with certain charges or certain amounts of bond to visit the law library. To the extent Plaintiff is raising an equal protection claim, such a claim fails. To invoke the Equal Protection Clause, Plaintiff must show that he was similarly situated to other inmates. See Plyler v. Doe, 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1987). The Equal Protection Clause essentially mandates "that all persons similarly situated should be treated alike." Cleburne v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); see Cook v. Babbitt, 819 F.Supp. 1, 9 (D.D.C.1993). Plaintiff fails to set forth any specific allegations of discrimination and he certainly has not presented any evidence that similarly situated inmates were treated differently. The undersigned concludes from the record that Plaintiff has failed to set forth an equal protection claim. Mere conclusory allegations of discrimination are insufficient to state a claim. Chapman v. Reynolds, 378 F.Supp. 1137, 1139 (W.D.Va.1974).

### F. Conditions of Confinement

Plaintiff complains of dirty sheets, used shower shoes and cups, double celling and placing healthy inmates in cells with inmates who have tuberculosis. Confinement conditions of pretrial detainees are to be evaluated under the due process clause rather than the Eighth Amendment prohibition against cruel and unusual punishment. Bell, 441 U.S. at 535 n. 16. To prevail on a conditions of confinement claim, a pretrial detainee must show either (1) an expressed intent to punish, or (2) lack of a reasonable relationship to a legitimate nonpunitive governmental objective, from which a punitive intent may be inferred. Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir.1992) (citing Martin v. Gentile, 849 F.2d 863, 870 (4th Cir.1988)). Prison officials act with the requisite culpable intent when they act with deliberate indifference to the inmates' suffering. Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir.) (citing Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)), as amended, 75 F.3d 448 (9th Cir.), cert. denied, 516 U.S. 916, 116 S.Ct. 306, 133 L.Ed.2d 210 (1995). The test for whether a prison official acts with deliberate indifference is a subjective one: the official must "know of and disregard an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. However, due process also requires the State to provide pretrial detainees with some minimal level of food, living space, and medical care, and "the failure to provide that level of necessities violates due process-even though the conditions imposed serve some ordinarily legitimate state objective." Hamm v. Dekalb Co., 774 F.2d 1567, 1573 (11th Cir.1985), cert. denied, 475 U.S. 1096, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986). The plaintiff must prove that he was deprived a "basic need" and that this deprivation was attended by deliberate indifference on the part of the defendants. Strickler v.

Waters, 989 F.2d 1375, 1379 (4th Cir., cert. denied, 510 U.S.949 (1993)). Further, the plaintiff must produce evidence of serious or significant physical or emotional injury resulting from challenged conditions to withstand summary judgment on prison conditions claim. Id. at 1380-1381.

As for Plaintiff's double celling claim, the detention center may have in fact had an excess of inmates during the relevant time period, but that does not mean plaintiff's constitutional rights were violated. It is "well established that 'double or triple celling of inmates is not per se unconstitutional.' " Hause v. Harris, 2008 WL 216651 (D.S.C. January 23, 2008) citing Mathias v. Simpkins, 2007 WL 1577336 at *2 (W.D.Va. May 31, 2007). Plaintiff has failed to show that Defendants actually knew of and disregarded a substantial risk of serious injury to him or that they actually knew of and ignored any serious need for medical care on behalf of Plaintiff. See Coclough v. Major, 2008 WL 1744556 (D.S.C. April 10, 2008) citing Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir.2004). Therefore, no viable 1983 claim has been presented. Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir.1985)[the fact that pretrial detainee temporarily had to sleep on a mattress on the floor or on a table "is not necessarily a constitutional violation."]. Furthermore, plaintiff fails to show that Defendants had an express intent to punish him.

Additionally, Plaintiff has not presented evidence to create a genuine issue of material fact as to whether plaintiff was denied the minimal civilized measure of life's necessities, or that Defendants engaged in any conduct "for the very purpose of causing harm or with the knowledge that harm would result. See Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Plaintiff has not shown that he was deprived a "basic need" or that these alleged deprivations were attended by deliberate indifference on the part of Defendants.

For these reasons, Plaintiff's claims fail as a matter of law and summary judgment is appropriate.[2]

### G. Disciplinary Hearings

Plaintiff complains that inmates are found guilty of disciplinary violations without notice or disciplinary hearings or without allowing assistance or allowing inmate to call witnesses.

In <u>Wolff v. McDonnell</u>, 418 U.S. 539, 563-66, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the United States Supreme Court addressed the due process rights of prisoners during disciplinary proceedings. The Supreme Court enumerated the following five procedural safeguards which are required in a prison disciplinary proceeding: (1) the right to appear before an impartial decision-making body; (2) written notice of the charges 24 hours in advance of the disciplinary hearing; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative if charged inmate is illiterate or if complex issues are involved; and (5) a written decision by the fact-finder as to the evidence relied upon and the rationale behind the disciplinary tribunal's conclusion.

Prior to the filing of his Complaint, on January 31, 2008, Plaintiff was charged with tampering with security or safety equipment and vandalism. See, Exhibit A, pg. 34 (attached to Shull[3] Aff.). The record before the Court shows that Plaintiff received Notice of Disciplinary Charges and

---

[2] To the extent Plaintiff is also claiming that Defendants were deliberately indifferent to his medical needs, such a claim fails as well. Plaintiff has not shown that any improper screening was 'so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." <u>Miltier v. Beorn</u>, 896 F.2d 848, 851 (4th Cir. 1990).

[3] Jeanne Shull is an Assistant Watch Commander at the Alvin S. Glenn Detention Center. Shull Aff. at ¶¶ 1, 4.

Detention on January 31, 2008. Ex. A, p. 33. He requested to appear before the Disciplinary Hearing Officer, but did not want a staff or inmate advisor. Id. The Disciplinary Hearing was held on February 1, 2008. Ex. A, p. 34. The written findings indicate that Plaintiff waived his right to 24 hour notice and admitted to the charge. Id. No witnesses were called, but there is no indication that Plaintiff requested to call any witnesses. Only the incident report was presented. Id.

In his Response, Plaintiff admits that he has no problem admitting to a charge if he is guilty, but he should receive a proper disciplinary hearing if he denies a charge. Plaintiff fails to present any evidence that he was denied a disciplinary hearing or otherwise denied due process. His conclusory allegations are insufficient to give rise to a claim.[4] Thus, summary judgment is appropriate.

**H.     Religion**

Plaintiff complains that Muslim and Hebrew inmates are not allowed prayer rugs, provided with kosher meals or allowed to have their Friday services.

When the Plaintiff was first booked into the detention center he was questioned as to his religious affiliations. Ex. A, p. 1. His response was that he had no religious affiliation. Id. Plaintiff's first request to acquire a religious diet was in December of 2007. Id. at pp. 25-26, Affidavit of Shull. In that request the Plaintiff stated that he was "Hebrew (orthodox Jew)" and that he wanted to receive a Kosher diet. Id. The administrative response to this request indicated that the Plaintiff had not listed a religious preference at the time of incarceration, and that he would need to provide proof that he was actually member of the listed religion. Id. The Plaintiff again requested Kosher meals,

---

[4] Plaintiff states generally that he should receive a fair hearing if he denies a charge against him. He does not specify a particular instance during which he was denied a fair hearing. Thus, Plaintiff has failed to present an actual case or controversy before this Court with respect to his due process claim.

stating that he was "Hebrew (orthodox Jew)" on January 6, 2008. Id. at pp. 27-28. Plaintiff clarified his religious beliefs as House of Yahweh. Id. at pp. 20-21.

In a response to the Plaintiff's February 2, 2008 request, the administrative staff indicated that they had contacted the "Head" of the House of Yahweh religion to inquire as to the religious dietary restraints of the religion. Id. It was conveyed to the administrators that a "pork-free" diet was sufficient for the religious beliefs of House of Yahweh members. Id. However, Plaintiff continued to request a "specialized diet," and eventually the food service provider for the detention center had their licensed dietician create a nutritiously balanced menu specifically tailored for members of the House of Yahweh. Ex. B (attache to Shull Aff.). The menu went into effect on March 26, 2008. However, Plaintiff was not given a religion specific meal until May 2, 2008. Ex. B. This delay was due in part to Plaintiff failure to list a religious affiliation during the booking process. Ex. A at p. 1. The delay was further complicated by the Plaintiff's claim of being "Hebrew," "Orthodox Jew," and "House of Yahweh" or "Yahwist," during his attempts to acquire a religion specific diet. See, generally, Ex A.

In his responses to the Court's Special Interrogatories, Plaintiff maintains that he is a member of the "House of Yahweh" religion. Answers to Special Interrogatories (Document # 12). He claims that he is not allowed to eat pork and that he is supposed to be getting a Kosher Diet. Id. Plaintiff admits in those responses that the administrators of the detention center have provided him with a special diet but the food is bland. Id.

Plaintiff presumably brings this claim under Religious Land Use and Institutionalized Persons Act (RLUIPA). In 2000, Congress enacted the RLUIPA, 42 U.S.C. § 2000cc-1(a)(1)-(2), which provides in part: "No government shall impose a substantial burden on the religious exercise of a

person residing in or confined to an institution," unless the burden furthers "a compelling governmental interest," and does so by "the least restrictive means." In passing RLUIPA, Congress "resurrected RFRA's language, but narrowed the scope of the act, limiting it to laws and regulations concerning institutionalized persons or land use." Murphy v. Missouri Dept. Of Corrections, 372 F.3d 979, 987 (8th Cir. 2004). The proper standard of review under RLUIPA is: (1) have the defendants imposed a substantial burden on the plaintiff's exercise of religion; (2) does the substantial burden further a compelling governmental interest; and (3) has it been done by the least restrictive means. See Lovelace v. Lee, 472 F.3d 176, 182 (4th Cir. 2006).

Neither RFRA or RLUIPA define "substantial burden," but the Supreme Court has defined the term in the related context of the Free Exercise clause. According to the Court, a "substantial burden" has been defined as: "where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs." Thomas v. Review Board, Indiana Employment Security Division, 450 U.S. 707, 717-18 (1981). However, the burden placed on the religious exercise "must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief which is central to religious doctrine." Graham v. C.I.R., 822 F.2d 844, 851 (9th Cir.1987), aff'd. sub nom., Hernandez v. Commissioner, 490 U.S. 680 (1989). In Lovelace v. Lee, 472 F.3d 174 (4th Cir. 2006), the Fourth Circuit Court of Appeals stated:

> We likewise follow the Supreme Court's guidance in the Free Exercise Clause context and conclude that, for RLUIPA purposes, a substantial burden on religious exercise occurs when a state or local government, through act or omission, "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." Id. at 187 (quoting Thomas, 450 U.S. at 718).

Only personal practices that are both sincerely held and rooted in religious belief fall under the protections of the Free Exercise Clause or RLUIPA. Wisconsin v. Yoder, 406 U.S. 205, 215-16 (1972); Cutter v. Wilkinson, 544 U.S. 709, 725 n. 13 (2005) (noting that under RLUIPA, "prison officials may appropriately question whether a prisoner's religiosity, asserted as the basis for a requested accommodation, is authentic" and whether his "professed religiosity" is "sincere"). "Evidence of nonobservance is relevant on the question of sincerity," but is not "conclusive of insincerity." Reed v. Faulker, 842 F.2d 960, 963 (7th Cir.1988) (recognizing that "an inmate may adopt a religion merely to harass the prison staff with demands to accommodate his new faith"). Here, Defendants question the sincerity of Plaintiff's religious beliefs for two reasons: 1) he stated at booking that he had no religious affiliation and did not request a specialized, religion-based diet until almost ten months after his booking, and 2) he changed his religious affiliation several times before finally identifying in his answers to the Court's Special Interrogatories that he is a member of the House of Yahweh. The undersigned will assume for purposes of this motion that Plaintiff's religious beliefs are sincere.

Thus, the Court must consider whether the defendants imposed a substantial burden on the plaintiff's exercise of religion. As conceded by Plaintiff, the detention center now provides him with a specialized diet. The menu was created after speaking with the "Head" of the House of Yahweh religion regarding the dietary requirements of that religion. However, a delay of approximately five months occurred before Plaintiff was provided with the diet because of confusion about Plaintiff's religious affiliation and the type of diet required under the beliefs of that religion. Thus, the burden suffered by Plaintiff would be the delay in receiving the diet once he requested it.

The Eastern District of Western District recently considered a similar case. In Terrell v.

Montalbano, C/A No. 7:07-cv-518, 2009 WL 187647 (W.D.Va January 23, 2009), the institution at which the plaintiff was confined deferred the provision of a religion-based diet to the plaintiff for six months from the time his of request to allow the administration time to evaluate the sincerity of the plaintiff's religious beliefs. Id. at *1. The court found that the plaintiff's beliefs were sincere and that the deferment placed a substantial burden on the plaintiff's exercise of religion.

The defendant on Terrell argued that the burden compelled a compelling governmental interest because the specialized diet cost double or triple the regular menu and that serving alternate menus strains prison officials' ability to determine adequate food quantities because inmates often attempt to eat from menus for which they were not approved. Id. at *2. The defendant described in her affidavit the considerations made when determining sincerity during the six month deferment period, including regular participation in religious services or programs or obtaining religious literature from the Chaplin. Id.

The court found that the deferment period was the least restrictive means of furthering a compelling governmental interest, namely, to control costs. Id. at *3. "An explanation for the policy's restrictions that takes into account any institutional need to maintain good order, security, and discipline or to control costs will be afforded due deference." Lovelace, 472 F.3d at 190.

In the present case, Shull avers that "due to administrative restraints, we are not able to provide an individualized diet to each inmate at the detention center. Therefore, we require a medical or religious mandate before an inmate is place on a diet differing from the standard diet at the detention center." Shull Aff. at ¶ 32. She further avers that "this precaution is especially important when dealing with religious dietary concerns, as specialized diets are far more expensive for the detention center, and require addition administrative resources to monitor the distribution of

the specialized diets.

Plaintiff fails to create an issue of fact as to the least restrictive means of furthering the compelling governmental interest of controlling costs. Plaintiff's complaint that the diet provided is bland is without merit because the lack of variety does not substantially burden Plaintiff's practice of his religion. See Leonard v. Murray, 843 F.2d 1387, 1988 WL 30716 (4th Cir. 1988) (Table) ("[e]ven though the kosher menus do appear to be more repetitive than those prepared for the general population, this lack of variety does not impermissibly impede the inmates' practice of their religion"). Thus, summary judgment is appropriate on this claim.

**I.      Failure to Exhaust Administrative Remedies**

Although Plaintiff also raises claims that he is not allowed to have prayer rugs or attend religious services, Defendants assert that Plaintiff has not exhausted his administrative remedies with respect to those claims. The inmate grievance forms submitted by both Plaintiff and Defendant reveal that Plaintiff complained only about the failure to provide him a proper diet.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust the available administrative remedies before filing an action concerning conditions of his confinement. 42 U.S.C.1997e(a). Before plaintiff may proceed with his claims in this Court, he must first exhaust his administrative remedies available through the SCDC grievance process. The United States Supreme Court has held that "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); Jones v. Smith, 266 F.3d 399 (6th Cir.2001) (exhaustion required even though plaintiff claimed futility); Larkin v. Galloway, 266 F.3d 718 (7th Cir.2001) (exhaustion required even though plaintiff

claimed he was afraid); see also Claybrooks v. Newsome, 2001 WL 1089548 (4th Cir., September 18, 2001) (unpublished opinion) (applying Booth v. Churner to affirm district court's denial of relief to plaintiff). A failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including § 1983. Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368 (2006). Therefore, these claims are not properly before the Court and should be dismissed.

### J. Qualified Immunity

Defendants also assert that they are entitled to qualified immunity in their individual capacities. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); see also Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir.2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." Wilson, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry

ends there "because government officials cannot have known of a right that does not exist." Porterfield v. Lott, 156 F.3d 563, 567 (4th Cir.1998). As discussed above, Plaintiff has failed to present sufficient evidence to support his constitutional violation allegations. Nevertheless, assuming arguendo that Plaintiff has presented sufficient evidence of a constitutional violation, Defendants are entitled to qualified immunity from suit.

In Maciariello v. Sumner, 973 F.2d 295 (4th Cir.1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

Maciariello, 973 F.2d at 298. Even assuming a violation of the RLUIPA, Defendants' delay in addressing the diet request to evaluate the legitimacy of the request and of the religious beliefs was not violative of Plaintiff's clearly established rights. Certainly, Defendants in the present case have not transgressed any "bright lines" of constitutional conduct and, as such, are entitled to qualified immunity.

## V. CONCLUSION

For the reasons set forth above, it is recommended that Defendants' Motion for Summary Judgment (Document # 50) be granted and this case be dismissed in its entirety.

s/Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge

August 10, 2009  
Florence, South Carolina

**The parties are directed to the important notice on the following page.**